UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DANDRE ALEXANDER,

        Plaintiff,        Case No. 2:16-cv-209

v.        Honorable Paul L. Maloney

UNKNOWN NURKALA, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Napel, Nurkala, Caron, Mohrman, Mohr, and Calzetta. The Court will serve the complaint against Defendants Huss, Govern, Viitala, and Leach with regard to Plaintiff's retaliation claims.

**Discussion**

    I.    Factual allegations

Plaintiff Dandre Alexander, a state prisoner currently confined at the Macomb Correctional Facility, filed that *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Sergeant Unknown Nurkala, Warden Robert Napel, Deputy Warden Erica Huss, Grievance Coordinator Glen Caron, Assistant Resident Unit Supervisor Fred Govern, Resident Unit Manager Unknown Viitala, Assistant Resident Unit Supervisor Nicholas Calzetta, Hearing Officer Thomas O. Morhman, Hearing Investigator Unknown Mohr, and Corrections Officer Unknown Leach.

Plaintiff alleges that in December of 2015, while he was confined at the Marquette Branch Prison (MBP), Defendant Leach subjected Plaintiff to various harassing conduct in retaliation for Plaintiff filing a grievance on one of Defendant Leach's co-workers. Plaintiff states that Defendant Leach tampered with his food on multiple occasions by crushing the contents of his snack bags and spitting in his tray. On December 15, 2015, Defendant Leach told Plaintiff that he was being subjected to harassment because he had written a grievance on Defendant Leach's co-worker, Gluesing. On one occasion, Defendant Leach stole Plaintiff's snack bag, stating "I hope you starve tonight nigger." Defendant Leach also denied Plaintiff showers on multiple occasions.

On December 15, 2015, Plaintiff filed a complaint with Defendant Napel. Plaintiff also notified Defendant Govern of Defendant Leach's retaliatory actions. Defendant Govern told Plaintiff that it was funny that he thought Defendant Govern would help him. Plaintiff had previously filed grievances on Defendant Govern. On December 17, 2015, Plaintiff notified Defendant Huss of Defendant Leach's threat to write a false misconduct on Plaintiff. Defendant Huss refused to investigate, stating that it was not her

job to help him and that she knew Defendant Leach. On December 20, 2015, Plaintiff asked his neighbor Lorenzo Kilgore to generate a sworn declaration attesting that Defendant Leach had threatened to write a false misconduct ticket on Plaintiff. On December 21, 2015, Officer Smith escorted Plaintiff to the shower. While Plaintiff was away from his cell, Defendant Leach conducted a retaliatory cell search, messing up Plaintiff's cell, breaking his Sony ear buds, and taking Plaintiff's legal papers and grievances. On December 22, 2015, Defendant Leach threw a piece of paper meant for Plaintiff on the floor and stated, "Pick that shit up nigger!" On December 24, 2015, Defendant Leach wrote a false misconduct ticket on Plaintiff.

Plaintiff claims that on December 30, 2015, Defendant Viitala told him that prison officials "all knew [Plaintiff] deserve everything bad that happens to [him]." Plaintiff asserts that Defendant Viitala was aware of Defendant Leach's retaliatory conduct, but failed to intervene. Plaintiff alleges that Defendant Napel also failed to conduct an investigation into Plaintiff's grievances or to intervene on Plaintiff's behalf because of Plaintiff's prior complaints against him. Plaintiff states that Defendant Nurkala also knew of Plaintiff's situation, but failed to take any corrective action.

Defendant Mohr conducted the investigation into the misconduct that had been written on Plaintiff by Defendant Leach and failed to obtain video footage of Defendant Leach tampering with Plaintiff's food and harassing Plaintiff. Defendant Mohr told Plaintiff that if he incriminated officers, no one would have his back if he were attacked by inmates. On January 6, 2016, Defendant Mohrman conducted a hearing on the misconduct and found Plaintiff guilty. *See* ECF No. 1-1, PageID.24. Plaintiff offers the affidavit of prisoner Joe W. Laird #454396, who attests that he overheard Defendant Mohrman during the hearing stating that he did not care what Plaintiff had to say and ordering Plaintiff to leave. *See* ECF No.

1-1, PageID.26. Plaintiff also offers the affidavit of prisoner Hersey #273259, who attests that he overheard Defendant Morhman talking to Defendant Calzetta. According to Hersey, Defendant Calzetta said that he was close friends with Defendant Leach and asked Defendant Mohrman to find Plaintiff guilty of the misconduct as a personal favor to Defendant Calzetta. Defendant Mohrman responded that he would sentence Plaintiff to 21 days loss of privileges if Defendant Calzetta bought him lunch for the next two days, and Defendant Calzetta agreed. *See* ECF No. 1-1, PageID.25.

Plaintiff alleges that Defendant Caron violated the grievance policy when he assigned Defendant Govern as a grievance respondent to a grievance that Plaintiff had written on Defendant Govern. In addition, Defendant Govern violated policy when he responded to the grievance.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims that Defendant Leach retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be

able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As noted above, Defendant Leach allegedly tampered with Plaintiff's food, deprived him of showers, performed a retaliatory cell search, destroyed and took Plaintiff's personal and legal property, threatened Plaintiff with a misconduct ticket, and eventually wrote a false misconduct on Plaintiff in an attempt to punish him for writing a grievance on Defendant Leach's co-worker. The Court notes that the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). In addition, a cell search and confiscation of legal papers and other property may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Because Plaintiff has set forth a chronology of events and a pattern of conduct that, if true, clearly rises to the level of adverse action, the Court concludes that this claim is not clearly frivolous and may not be dismissed on initial review.

Plaintiff claims that Defendants Govern, Huss, and Viitala conspired to cover up Defendant Leach's retaliatory conduct against Plaintiff in retaliation for Plaintiff's use of the grievance system. Plaintiff alleges that he had previously filed grievances on Defendant Govern, and that Defendant Govern told him that it was funny that Plaintiff thought he would help him. Defendant Huss allegedly told Plaintiff that it was not her job to help him and that she knew Defendant Leach. Defendant Viitala allegedly told Plaintiff that

prison officials all knew that Plaintiff deserved every bad thing that happened to him. The Court concludes that Plaintiff's conspiracy and retaliation claims against Defendants Govern, Huss, and Viitala are not clearly frivolous and may not be dismissed on initial review.

Plaintiff also claims that Defendants Napel and Nurkala failed to intervene on his behalf. However, Plaintiff fails to make specific factual allegations against Defendants Napel and Nurkala, other than his claim that they failed to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Napel and Nurkala engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff alleges that Defendants Calzetta, Mohr, and Mohrman violated his due process rights with regard to his hearing on the misconduct ticket written by Defendant Leach. As noted above,

Plaintiff claims that Defendant Calzetta bribed Defendant Mohrman to find Plaintiff guilty by agreeing to buy him two lunches. Plaintiff also claims that Defendant Mohr failed to properly investigate Plaintiff's claims that he was innocent. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the

creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Although some of the restraints to which plaintiff was subjected (such as TOB restraint) may qualify as atypical if imposed for punitive reasons on a misconduct conviction, there is no evidence that such restraints were so used in this case. Rather, these restraints were applied

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

by order of the Assistant Warden in an effort to control plaintiff's violent outbursts, not as sanctions ordered by the hearing officer. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Therefore, Plaintiff's due process claims against Defendants Calzetta, Mohrman, and Mohr are properly dismissed.

Finally, Plaintiff claims that Defendants Caron and Govern violated his due process rights when they did not follow grievance policy. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants Caron and Govern did not deprive him of due process.

Plaintiff also claims that Defendants' conduct violated his rights under state law. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995);

-10-

*Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice to his ability to pursue those claims in state court.

In conclusion, the Court notes that Plaintiff's retaliation claims against Defendants Leach, Govern, Huss, and Viitala are not clearly frivolous and may not be dismissed on initial review. However, Plaintiff's claims against Defendants Napel and Nurkala are based solely on respondent superior and are properly dismissed. Plaintiff's due process claims against Defendants Caron, Govern, Calzetta, Mohrman, and Mohr also lack merit and are properly dismissed. Finally, Plaintiff's state law claims are properly dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Napel, Nurkala, Caron, Mohrman, Mohr, and Calzetta will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Huss, Govern, Viitala, and Leach.

An Order consistent with this Opinion will be entered.


Dated:   January 10, 2017             /s/ Paul L. Maloney
                                      Paul L. Maloney
                                      United States District Judge