UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.                                                   Case No. 2:16-cv-209
                                                 HON.  PAUL L. MALONEY

ERICA HUSS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner D'Andre Alexander pursuant to 42 U.S.C. § 1983.  After initial screening, the Court determined that Plaintiff's viable claims include conspiracy and retaliation claims against Defendants Unknown Leach, Erica Huss, Fred Govern, and Unknown Viitala.[1]  Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  (ECF No. 38).  Plaintiff has responded.  (ECF No. 40). This matter is now ready for decision.

Plaintiff's claims arise from events that occurred while he was incarcerated at Marquette Branch Prison (MBP) in 2015.  Plaintiff alleges that Defendant Leach began retaliating against him in response to Plaintiff filing a grievance against another prison official. On December 9, 2015, Plaintiff alleges that Defendant Leach crushed his snack bag and "encouraged suicidal

---

[1] In his brief, Plaintiff alleges that the Court never dismissed his conspiracy claims against Napel, Nurkala, Caron, Mohrman, Mohr, and Calzetta.  However, in its January 10, 2017, screening opinion, "the Court determine[d] that Defendants Napel, Nurkala, Caron, Mohrman, Mohr, and Calzetta will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)."  (ECF No. 6, PageID.77).  In accordance with this opinion, the Court issued an order dismissing with prejudice Plaintiff's claims against Napel, Nurkala, Caron, Mohrman, Mohr, and Calzetta.  (ECF No. 7).  In addition, Napel, Nurkala, Caron, Mohrman, Mohr, and Calzetta were never served in this case.  Accordingly, the undersigned will not address Plaintiff's allegations against Napel, Nurkala, Caron, Mohrman, Mohr, and Calzetta.

behavior." On December 12, 2015, Plaintiff alleges that Defendant Leach crushed his snack bag. On December 13, 2015, Plaintiff alleges that Defendant Leach tampered with his food tray. On December 14, 2015, Plaintiff alleges that Defendant Leach spit in his food and crushed his snack bag. On December 15, 2015, Plaintiff alleges that Defendant Leach refused to give him his mail. On December 16, 2015, Plaintiff alleges that Defendant Leach refused to let him shower and crushed his snack bag. On December 17, 2015, Plaintiff alleges that Defendant Leach stole his snack bag. On December 21, 2015, Plaintiff alleges that Defendant Leach conducted a retaliatory cell search and damaged his headphones and legal materials. On December 22, 2015, Plaintiff alleges that Defendant Leach called him a racial slur, as well as threw a piece of paper on the floor and told him to pick it up. On December 24, 2015, Plaintiff alleges that Defendant Leach wrote a false misconduct ticket on him for threatening behavior and crushed his snack bag. Plaintiff was subsequently found guilty on the misconduct ticket.[2] On December 25, 2015, Plaintiff alleges that Defendant Leach "antagonized" him. On December 29, 2015, Plaintiff alleges that Defendant Leach harassed him while he was in a suicide observation cell.

       Plaintiff further alleges that Defendants Erica Huss, Fred Govern, and Unknown Viitala conspired to cover up Defendant Leach's retaliatory conduct. According to Plaintiff, Defendant Huss was the deputy warden at MBP, Defendant Govern was an ARUS and Defendant Leach's direct supervisor, and Defendant Viitala was the RUM and managed Defendant Leach's unit. Plaintiff alleges that on an unspecified date, he informed Defendant Govern of Defendant Leach's conduct. Defendant Govern replied that it was "funny" that Plaintiff thought he would help him. Plaintiff also alleges that Defendant Govern was the respondent on one of his grievances, but refused to properly investigate the grievance. On December 17, 2015, Plaintiff alleges that he

---

[2] Neither party submitted any documentation regarding the misconduct hearing.

notified Defendant Huss of Defendant Leach's threat to write a false misconduct on Plaintiff. Defendant Huss refused to investigate, stating that it was not her job to help him and that she knew Defendant Leach. On December 30, 2015, Plaintiff informed Defendant Viitala of Defendant Leach's conduct. Defendant Viitala replied that Plaintiff deserves "everything bad that happens to [him]." (PageID.289). Plaintiff again informed Defendant Huss on January 6, 2015.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252; *see also Leahy v. Trans Jones*, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. *Moore, Owen, Thomas & Co. v. Coffey*,

992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants assert that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

Plaintiff first alleges that Defendant Leach retaliated against him in response to Plaintiff filing a grievance against another prison official. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a

plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  "If the prisoner can show that the defendants' adverse action was at least partially motivated by the prisoner's protected conduct, then the burden shifts to the defendants to show that they would have taken the same action even absent such protected conduct." *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010).

Defendant Leach contends that Plaintiff failed to establish the second element of a retaliation claim—that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in the protected conduct.  In *Maben v. Thelen*, the Sixth Circuit explained:

> "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). However, some adverse actions are so de minimis that they do not rise to the level of a constitutionally cognizable injury. *Thaddeus–X*, 175 F.3d at 396 (citing *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401 (1977)). "[T]his threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Id.* at 398. Indeed, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Bell*, 308 F.3d at 603. (citing *Thaddeus–X*, 175 F.3d at 398); *Kennedy v. Bonevelle*, 413 Fed. Appx. 836, 840 (6th Cir. 2011) ("[O]nly de minimis violations should be dismissed as a matter of law; in general, the adverseness question should survive the pleading stage.").

887 F.3d 252, 266 (6th Cir. 2018).  "Moreover, because 'there is no justification for harassing people for exercising their constitutional rights,' the deterrent effect of the adverse action need not be great in order to be actionable." *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010) (citing

*Thaddeus–X*, 175 F.3d at 397).  Thus, the undersigned must determine whether the alleged adverse acts were more than de minimis.

Here, Plaintiff alleges that Defendant Leach: (1) crushed and stole his snack bags; (2) spat in his food; (3) called him racial slurs; (4) refused to give him his mail; (5) refused to let him shower; (6) conducted a retaliatory cell search and damaged his headphones and legal materials; (7) issued him a false misconduct ticket; and (8) antagonized him while he was in a suicide observation cell.  Defendant Leach is correct that some of these alleged acts—standing alone—may not rise to an adverse act.  *See Lewis v. Reisener*, 2016 WL 6997912, at *3 (W.D. Mich. 2016) (racial slurs do not amount to an adverse act); *Hursey v. Klinesmith*, 2011 WL 2580403 at *7 (W.D. Mich. June 28, 2011) ("denial of a shower on one occasion, however, is not a sufficiently adverse action").  However, this case involves additional retaliatory acts that the Sixth Circuit has found could rise to level of an adverse act.  *See Maben*, 887 F.3d at 266 (the issuance of a misconduct ticket may rise to the level of an adverse action); *Bell v. Johnson*, 308 F.3d 594, 606-07 (6th Cir. 2002) (the confiscation of legal papers and stolen medical diet snacks was sufficient to establish an adverse action).  Accepting Plaintiff's allegations as true as required at the summary judgment stage, the undersigned finds that Plaintiff has alleged adverse acts that are more than de minimis.  Therefore, in the opinion of the undersigned, there is a genuine issue of material fact as to whether the alleged acts would deter a person of ordinary firmness from engaging in the protected conduct of filing grievances.

Next, the undersigned must determine whether Defendant Leach's conduct violated clearly established law. As of 2015, it was clearly established that a prisoner could not be retaliated against for filing grievances. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).  In addition, the Sixth Circuit has previously held that

a retaliatory cell search, the destruction of legal property, and the confiscation of food could amount to an adverse act.  *See Bell*, 308 F.3d at 606-07.  In the opinion of the undersigned, a reasonable prison officer would have been aware that this pattern of retaliatory conduct in response to Plaintiff filing a grievance could give rise to constitutional liability. Therefore, the undersigned recommends that the Court deny Defendant Leach's request for qualified immunity.

Plaintiff next alleges that Defendants Govern, Huss and Viitala conspired to cover up Defendant Leach's retaliatory conduct against Plaintiff in retaliation for Plaintiff's use of the grievance system.  Defendants argue that they are entitled to qualified immunity because they did not have sufficient personal involvement.  The Sixth Circuit has held that "liability under § 1983 must be based on more than *respondeat superior*." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  In other words, liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Id.* (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998).  "'At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982)).

In the opinion of the undersigned, Plaintiff has failed to show any active unconstitutional behavior on behalf of Defendants Govern, Huss, and Viitala.  Plaintiff simply alleges that he complained to Defendants Govern, Huss, and Viitala regarding Defendant Leach's retaliatory conduct. In response to these complaints, Defendants Govern, Huss, and Viitala refused to investigate and/or intervene in the problem.  Thus, Plaintiff is complaining that Defendants Govern, Huss, and Viitala failed to act in response to his complaints. Moreover, it appears that some of Plaintiff's allegations against Defendants Govern, Huss, and Viitala occurred after Defendant Leach had retaliated against Plaintiff and during the grievance process. For example,

Plaintiff complains that Defendants Govern and Huss refused to check video footage during the grievance process.  However, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Because Defendants Govern, Huss, and Viitala lacked the requisite personal involvement, the undersigned recommends that the Court granted Defendants Govern, Huss, and Viitala qualified immunity.

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 38) be GRANTED as to Plaintiff's claims against Defendants Govern, Huss, and Viitala and DENIED as to Plaintiff's claims against Defendant Leach.  Therefore, Defendants Govern, Huss, and Viitala should be dismissed from this case.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  May 29, 2018

                                                      /s/ Timothy P. Greeley
                                                      TIMOTHY P. GREELEY
                                                      UNITED STATES MAGISTRATE JUDGE